**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TRAVEL + LIESURE RESORT
DEVELOPMENT, INC. f/k/a
WYNDHAM VACATION
OWNERSHIP, INC., WYNDHAM
VACATION RESORTS, INC.,
WYNDHAM RESORT
DEVELOPMENT CORPORATION,

      **Plaintiffs,**

v.                              **Case No: 6:25-cv-0632-GAP-DCI**

LINX LEGAL, INC., ROSARIO CRAIG
MUSUMECI,

      **Defendants.**

---

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Plaintiffs' Motion to Strike Certain of Defendants' Affirmative Defenses.  Doc. 42 (the Motion to Strike).  As will be explained, the undersigned recommends the Court **GRANT IN PART and DENY IN PART** the Motion to Strike.

**I.      BACKGROUND**

On April 9, 2025, Travel + Leisure Resort Development, Inc. f/k/a Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., and Wyndham Resort Development Corporation (collectively, Plaintiffs) filed a complaint against Linx Legal, Inc. and Rosario Craig Musumeci (collectively, Defendants) alleging tortious interference and violations of the Lanham Act and Florida's Deceptive and Unfair Trade Practices Act (FDUPTA).  Doc. 1 (the Complaint).  In the Complaint, Plaintiffs allege that "Defendants operate an unlawful timeshare exit business that promises illusory services to consumers while making false promises of success."  *Id.* at 2.

Defendants initially moved to dismiss the Complaint (Doc. 25), which motion the Court denied. Doc. 36. Defendants then filed an answer, which included two counterclaims and twenty-six affirmative defenses. Doc. 41.

On August 19, 2025, Plaintiffs filed the instant Motion to Strike, seeking to strike fourteen of the twenty-six affirmative defenses because they are "legally invalid, are mere denials, are inapplicable to this case, or are otherwise defective." Doc. 42 at 2. Defendants filed a response and contend that the fourteen challenged affirmative defenses "are either proper affirmative defenses, valid denials, or sufficiently pled to provide notice[.]" Doc. 44 at 2 (the Response).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(b) provides that when a party responds to a pleading, it must "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b). Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense." "The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 12(f), "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should only be granted if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citations omitted). Courts are split regarding whether the pleading standard set forth in the Supreme Court cases of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) applies to affirmative defenses. However, the undersigned agrees with the line of cases holding

2

that the heightened pleading standard set forth in *Twombly* and *Iqbal* does not apply to affirmative

defenses. *See e.g., Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1157-Orl-37GJK,

2015 WL 12839263, at *1 (M.D. Fla. Aug. 18, 2015); *Gonzalez v. Mid-land Credit Mgmt., Inc.*,

No. 6:13-cv-1576-Orl-37TBS, 2013 WL 5970721, at *2–3 (M.D. Fla. Nov. 8, 2013); *Adams*, 2011

WL 2938467, at *2-4 (M.D. Fla. 2011).

Although "an affirmative defense may be stricken if it is legally insufficient, . . . striking a

defense is a drastic remedy, which is disfavored by the courts." *Adams v. JP Morgan Chase Bank,

N.A.*, No. 3:11-cv-337-J-37MCR, 2011 WL 2938467, at *1 (M.D. Fla. July 21, 2011) (citations

and internal quotation marks omitted); *see also Somerset Pharm., Inc. v. Kimball*, 168 F.R.D. 69,

71 (M.D. Fla. 1996) (stating that motions to strike are not favored and are often considered time

wasters). "'An affirmative defense is insufficient as a matter of law only if: (1) on the face of the

pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law.'" *Adams*, 2011 WL

2938467, at *1 (M.D. Fla. 2011) (citation omitted). "Moreover, '[a]n affirmative defense will be

held insufficient as a matter of law only if it appears that the Defendant cannot succeed under any

set of facts which it could prove.'" *Id*. (citation omitted).

## III.    DISCUSSION

Plaintiffs move to strike fourteen of Defendants' twenty-six affirmative defenses. *See

generally*, Doc. 42. Having reviewed the Motion to Strike and the Response, the undersigned finds

that—in large part—the Motion to Strike is due to be denied. While the undersigned agrees with

Plaintiffs that many of Defendants' affirmative defenses are mere denials, "striking a defense is a

drastic remedy." *Adams*, 2011 WL 2938467, at *1. Accordingly, the undersigned recommends

the Court construe any negative averment as a denial; the undersigned recommends that eight of

the fourteen challenged defenses are mere denials. As to the Second, Twentieth, and Twenty-Fifth

affirmative defenses, the undersigned recommends that striking them at this juncture would be premature because a full consideration of the request requires further factual development or legal briefing.  But with respect to the Eleventh, Twelfth, and Fifteenth affirmative defenses, the undersigned recommends that the Court grant the Motion to Strike because they are duplicative or insufficient as a matter of law.  The undersigned will discuss each of those three categories of alleged affirmative defenses seriatim.

## A.    Affirmative Defenses Properly Treated as Denials

Defendants' First, Tenth, Fourteenth, Seventeenth, Twenty-Second, Twenty-Third, Twenty-Fourth, and Twenty-Sixth Affirmative Defenses are largely negative averments and challenges to Plaintiffs' entitlement to relief.  Courts routinely treat such statements as denials. *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) ("By its very definition, an affirmative defense is established only when a defendant admits the essential facts of a complaint and sets up other facts in justification or avoidance") (cleaned up).  "When a specific denial is labeled as an affirmative defense, a court will generally treat the defense as a denial and not strike it."  *William Stone Premier Props., LLC v. Oni Babatunde E.*, 2017 WL 2266919, at *3 (M.D. Fla. May 8, 2017), *report and recommendation adopted,* 2017 WL 2257720 (M.D. Fla. May 23, 2017).

### 1.    First and Fourteenth Affirmative Defenses

Defendants allege the following as their First and Fourteenth Affirmative Defenses:

> FIRST AFFIRMATIVE DEFENSE: Lack of Damages or
> Actionable Harm
>
> Wyndham has not suffered any damages or harm as a result of Defendants' alleged conduct, particularly with respect to timeshare owners who do not have an outstanding loan at the time they exit their timeshares because Wyndham voluntarily recovers the ownership interests through its Internal Programs or similar programs. For timeshare owners who default on their loan

4

obligations, Wyndham recovers the ownership interests and resells them, often at a profit. Upon information and belief, Wyndham also rents and resells defaulted timeshare interests while they remain subject to mortgages despite refusing to release the original owners from their loan obligations. To the extent that Wyndham refuses to exercise its rights in the collateral, they would otherwise be barred from enforcing any in personam rights against the timeshare owners under a variety of equitable principles, including the marshalling of assets doctrine, because the value of the collateral far exceeds any monetary debt owed by the timeshare owners. In addition, timeshare owners would be entitled to setoff any damage claims against Wyndham based upon counterclaims for fraud and other tortious conduct committed by Wyndham in the process of inducing consumers to purchase timeshares.

FOURTEENTH AFFIRMATIVE DEFENSE: Claims Involving Cancelled Timeshare Contracts – All Counts

Defendants assert that Plaintiffs may not include in their claims any damages or alleged harm attributable to a defaulting timeshare owner who defaulted on their timeshare loans for a timeshare contract or relationship that was previously terminated, novated, or modified in connection with the owner's subsequent "upgrade" and/or purchase of another timeshare interest that itself has been cancelled or foreclosed by Plaintiffs.

Doc. 41 at 20-21, 29.  Plaintiffs argue that the Court should strike these affirmative defenses because "Wyndham does not seek actual damages" and only seeks "disgorgement, attorneys fees, and injunctive relief." Doc. 42 at 5.  Plaintiffs further contend that "even if the Court were to read 'damages' in these 'defenses' as referring to 'injury' . . . these 'defenses' would be no more than mere denials." *Id.* at 6.  With respect to the First Affirmative Defense, Defendants respond that "the absence of any real injury is still relevant to the scope of relief and to issues like standing." Doc. 44 at 4.  As to the Fourteenth Affirmative Defense, Defendants assert that they have raised "fact-intensive issues inappropriate for resolution on a motion to strike," and courts "generally do not strike such [denial-type] defenses." *Id.* at 10.

As a threshold matter, neither party cites controlling or persuasive case law addressing whether a party seeking only equitable relief may assert lack of damages as an affirmative defense.

5

Plaintiffs do cite two cases in support of a narrower proposition: that disgorgement under the Lanham Act only requires proof of injury, not actual damages. Doc. 42 at 5 (citing *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343 (11th Cir. 2019) and *Instant One Media, Inc. v. EzFauxDecor, LLC*, 2023 WL 2422196, at n.1 (11th Cir. Mar. 9, 2023)). But neither case aids in resolving the inquiry before the Court. First, both cases are in a different procedural posture, with appellants challenging issues that arose during trial. *See Hard Candy*, 921 F.3d at 1352 (addressing "whether a plaintiff seeking the disgorgement of the defendant's profits and an accounting under the Lanham Act has the right to have its claims decided by a jury"); *Instant One Media*, 2023 WL 2422196 at *3, n.1 (evaluating district judge's "denial of a renewed motion for judgment as a matter of law"). Second, neither case involves a motion to strike affirmative defenses. *See generally*, *Id.* To the extent the cases are instructive as to the Lanham Act counts—Counts I and II—Defendants purport to raise the Fourteenth and First Affirmative Defense as to all counts. Doc. 41 at 29. Accordingly, the caselaw Plaintiffs cite is largely inapposite, and Defendants have cited no caselaw in support of their assertion that "the absence of any real injury is still relevant to the scope of relief and to issues like standing." Doc. 44 at 4.

But the parties appear to agree that the Court could—in the alternative—construe the First and Fourteenth Affirmative Defenses as denying elements of Plaintiffs' claims—namely, whether Plaintiffs can prove damages or "injury." Doc. 42 at 6 ("even if the Court were to read 'damages' in these 'defenses' as referring to 'injury,' as required by Wyndham's claims, these 'defenses' would be no more than mere denials"); Doc. 44 at 4 ("To the extent the First Affirmative Defense is merely a denial of an element of Plaintiffs' claims. . ."). Upon review, the undersigned agrees that the First and Fourteenth Affirmative Defenses are denials. *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima

6

facie case is not an affirmative defense"). And—to the extent Defendants merely contest an element of Plaintiffs' claims—the Court need not strike them. *See U.S. Commodity Futures Trading Comm'n v. Montano*, 2019 WL 568393, *1 (M.D. Fla. Feb. 1, 2019) ("Affirmative defenses that do not admit the complaint's factual allegations but are vehicles to attack the sufficiency of the complaint are treated as denials by courts within this district and are generally not stricken.").

Accordingly, the undersigned finds Defendants' First and Fourteenth Affirmative Defenses are not due to be stricken but should be treated as denials.

2.    **Tenth, Twenty-Second, and Twenty-Fourth Affirmative Defenses**

Defendants' Tenth, Twenty-Second, and Twenty-Fourth Affirmative Defenses state as follows:

> TENTH AFFIRMATIVE DEFENSE: Failure to State a Cause of Action – Count IV
>
> Defendants assert that Plaintiffs fails to state a cause of action for their Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim because (i) Defendants' advertising and/or trade practices are not deceptive, for purposes of FDUTPA, because they do not lead to the timeshare owner's detriment . . . (ii) Defendants' advertising and/or trade practices identified in the Complaint are not unfair, . . .
>
> TWENTY-SECOND AFFIRMATIVE DEFENSE: Non-Actionable Advertisements
>
> Wyndham's claim is barred because the alleged statements and advertisements at issue were true, were not misleading or deceptive, and/or constitute non-actionable opinion or puffery.
>
> TWENTY-FOURTH AFFIRMATIVE DEFENSE: No Deceptive Conduct
>
> The allegation that certain conduct of Linx misrepresents it as providing legal services is not deceptive because the fact that Linx is not a law firm is clearly stated in Linx's advertisements, communications with its customers, and its form contracts with its customers.

Doc. 41 at 24-27, 32-33.  Plaintiffs argue that the Court "should strike these 'defenses' as they are mere denials of the elements of the FDUTPA claim" and "a denial of Wyndham's False Advertising claim."  Doc. 42 at 10, 20.  Defendants respond that these defenses should not be stricken but treated as denials.  *See* Doc. 44 at 6 (noting as to the Tenth Affirmative Defense that "Courts in this and the Southern District treat 'failure to state a claim' affirmative defenses as denials"); *Id.* at 14 (noting as to the Twenty-Second Affirmative Defense that "the proper approach is to treat it as a denial rather than strike it"); *Id.* at 16 (describing the Twenty-Fourth Affirmative Defense as "specifically den[ying] that [Defendants'] actions were likely to deceive consumers").

Upon review, the undersigned agrees that these affirmative defenses deny certain facts and elements of Plaintiffs' claims.  Accordingly, the undersigned recommends the Court treat them as denials.

3.    **Seventeenth and Twenty-Third Affirmative Defenses**

Defendants' Seventeenth and Twenty-Third Affirmative Defenses state as follows:

> SEVENTEENTH AFFIRMATIVE DEFENSE: No Personal
> Liability of Musumeci
>
> Musumeci asserts that he is not personally liable for the corporate actions of Linx, which is a separate and distinct corporate entity that enjoys a wholly separate corporate existence from Musumeci, including, without limitation, any allegedly false, deceptive or misleading business practices made by Linx or its employees, any allegedly tortious interference by Linx or its employees with any of Plaintiffs' contracts or business relationships, and further that any alleged wrongdoing by Linx cannot be attributed to Musumeci because any such conduct was not approved, endorsed, or otherwise sponsored by Musumeci.
>
> TWENTY-THIRD AFFIRMATIVE DEFENSE: Lack of
> Causation
>
> Wyndham's claims fail for lack of proximate cause because, among other reasons, Linx's advertisements do not instruct consumers to stop paying Wyndham and do not prevent or inhibit consumers from using Wyndham's Internal Programs or working directly with

8

> Wyndham. To the contrary, consumers typically reach out directly to Wyndham first, and after Wyndham's Internal Programs and customer services fail, consumers only then seek out companies such as Linx.

Doc. 41 at 30-31, 33. As to the Seventeenth Affirmative Defense, Plaintiffs argue that it "merely denies [Plaintiffs'] allegations, claiming that Musumeci is not personally liable and that Linx's alleged conduct 'was not approved, endorsed, or otherwise sponsored by Musumeci.'" Doc. 42 at 17. As to the Twenty-Third Affirmative Defense, Plaintiffs argue that Defendants merely deny the causation-related allegations made in the Complaint. Doc. 42 at 21. In response, Defendants concede that these are denials and focus their briefing on arguing that they should not be stricken. Doc. 44 at 15 (referring to the Twenty-Third Affirmative Defense as a "negative defense"); *Id.* at 12 (referring to the Seventeenth Affirmative Defense as "den[ying] that Mr. Musumeci had the requisite personal involvement or knowledge to be liable"). The undersigned agrees with the parties that these defenses are denials.

Accordingly, the undersigned recommends that the Court treat the Seventeenth and Twenty-Third Affirmative Defenses as denials.

### 4. Twenty-Sixth Affirmative Defense

Defendants' Twenty-Sixth Affirmative Defense addresses the availability of equitable remedies. Defendants state as follows:

> TWENTY-SIXTH AFFIRMATIVE DEFENSE: Failure to State a Claim for Injunctive Relief
>
> Wyndham is not entitled to an injunction (preliminary or permanent) because there is no threat of immediate and irreparable injury, Wyndham has an adequate remedy at law (if any), Wyndham does not have a substantial chance of success on the merits, the hardship an injunction would impose on Defendants unreasonably outweighs any alleged benefit to Wyndham and an injunction would be adverse to the public interest.

Doc. 41 at 34.  Plaintiffs argue that "the Court should strike these 'defenses'" because they are "denials of Wyndham's requested relief."  Doc. 42 at 15, 16.  In response, Defendants assert that "Courts have allowed defenses that go to the availability or scope of remedies," but Defendants cite no legal authority in support of this conclusory assertion.  Doc. 44 at 11.  And a review of the plain language of the purported defense reveals that it is a denial of Plaintiffs' allegation that a threat of immediate and irreparable injury exists.  Doc. 41 at 34.  As explained above, attacks on "the sufficiency of the complaint are treated as denials . . . and are generally not stricken."  *See U.S. Commodity Futures Trading*, 2019 WL 568393, *1.

Accordingly, the undersigned recommends the Court treat the Twenty-Sixth Affirmative Defense as a denial.

### B.    Affirmative Defenses Not Subject to Being Stricken at this Juncture

The undersigned also recommends denying the Motion to Strike as to the Second, Twentieth and Twenty-Fifth Affirmative Defenses because they are not frivolous or clearly insufficient as a matter of law.

### 1.    Second Affirmative Defense

Plaintiffs argue that the Court should strike the Second Affirmative Defense—Failure to Mitigate Damages—as frivolous because Plaintiffs currently "do not seek actual damages."  Doc. 42 at 8.  Defendants contend that dismissal would be improper because "it is premature to say that mitigation can never be in issue."  Doc. 44 at 5.  The undersigned agrees with Defendants.

Aside from the general principle that striking affirmative defenses is disfavored, Plaintiffs' legal authority supports the conclusion that striking at this juncture would be improper.  Indeed, all but one of the cases cited by Plaintiffs were either in the summary judgment or post-trial stages of litigation.  *See Rolex Watch USA, Inc., v. BeckerTime LLC,* 2021 WL 4311450 (N.D. Tex. Sept.

10

21, 2021) (summary judgment); *Express Servs. Inc. v. Averette*, 2007 WL 9710850 (W.D. Okla. Sept. 28, 2007) (post-trial); Arst v. Stifel, Nicolaus & Co., Inc., 954 F. Supp. 1483 (D. Kan. 1997) (summary judgment); *Microsoft Corp. v. U-Top Printing Corp.*, 1996 WL 479066, at *1 (N.D. Cal. Aug. 13, 1996) (final judgment). Further, the one case Plaintiffs cited that involved a motion to strike—an unpublished case from the Northern District of Ohio—is distinguishable. There, the court reasoned that the mitigation defense could be stricken as inapplicable in part because the plaintiff—a government entity—"has no established duty to mitigate damages." *See FTC v. Stratford Career Inst.*, 2016 WL 3769187, at *4 (N.D. Ohio July 15, 2016).

Accordingly, the undersigned finds Plaintiffs' argument unpersuasive and recommends that the Court allow the Second Affirmative Defense to stand.

2.      **Twentieth Affirmative Defense**

The Twentieth Affirmative Defense—Unclean Hands—raises equitable considerations tied to Plaintiffs' conduct. Plaintiffs argue the defense should be stricken because "Linx has not sufficiently pled its unclean hands affirmative defense." Doc. 42 at 19. Defendants respond that the defense raises factual questions "inappropriate for resolution on a pleading motion." Doc. 44 at 13. The undersigned agrees striking at this juncture would be premature.

As a threshold matter, Plaintiffs' argument is based on a line of cases that hold affirmative defenses to a heightened pleading standard. Doc. 42 at 19 (citing *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *1-2 (S.D. Fla. Aug. 21, 2007) (stating that affirmative defenses "are subject to the general pleading requirements of Rule 8(a) and will be stricken if they fail to recite more than bare-bones conclusory allegations"). But district courts are divided on whether the heightened pleading standard applies to affirmative defenses, and the Eleventh Circuit has not decided the matter. *See Gonzalez v. Midland Credit Mgmt., Inc.*, 2013 WL 5970721, at *2

11

(M.D. Fla. Nov. 8, 2013) (collecting cases). As explained above, the undersigned agrees with the line of cases holding affirmative defenses to the lesser, notice pleading standard. The undersigned considers these cases more persuasive as they are grounded in the Federal Rules of Civil Procedure, distinguishing "Rule 8(a), which deals with the pleading requirements for complaints, and Rules 8(b) and (c), which deal with the pleading requirements for defenses." *Id.* at *3. With that in mind, the undersigned finds that the Twentieth Affirmative Defense is sufficient to put Plaintiffs on notice.

As to Plaintiffs' second argument—that Defendants fail to show that the defense is "directly related to the reason for this lawsuit" (Doc. 42 at 18)—whether Plaintiffs' actions are sufficiently related to the subject matter of this litigation to bar equitable relief is a factual inquiry inappropriate for resolution on a Rule 12(f) motion.

Accordingly, the undersigned recommends the Court allow the Twentieth Affirmative Defense to stand.

3. **Twenty-Fifth Affirmative Defense**

The Twenty-Fifth Affirmative Defense—No Extraterritorial Application and Dormant Commerce Clause—is not clearly invalid as a matter of law. Plaintiffs rely on Southern District of Florida precedent for the proposition that "[t]he FDUTPA is to be applied broadly" because "there are no geographical or residential restrictions contained in the express language of" the statute. *Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.*, 2023 WL 4079381, at *4 (S.D. Fla. June 20, 2023) (citing *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, 2012 WL 1570057 (S.D. Fla. May 2, 2012)). But Defendants rightly point out that Florida courts are split on the whether the FDUTPA applies extraterritorially. Doc. 44 at 17-18. To the undersigned, striking at this juncture would be improper. Indeed, the very fact that the parties dispute the scope

12

of the statute—and support their respective positions with legal authority—indicates that the matter is beyond the scope of Rule 12(f).

Accordingly, the undersigned recommends the Court allow the Twenty-Fifth Affirmative Defense to stand.

**C.      Affirmative Defenses That Should be Stricken**

Unlike the other challenged defenses—which are properly treated as denials or else allowed to stand at the nascent stages of a case—the Eleventh, Twelfth, and Fifteenth Affirmative Defenses are insufficient as a matter of law or else duplicative.  As will be explained, the Court should strike these.

**1.      Eleventh Affirmative Defense**

Defendants' Eleventh Affirmative Defense states:

> ELEVENTH AFFIRMATIVE DEFENSE: Lack of Standing – All Counts
>
> Defendants assert that Plaintiffs, who have initiated at least twenty (20) similar lawsuits across the country that allege the same claims and sets of circumstances alleged herein, lack standing to bring any claim with respect to any timeshare owner that financed their purchase and whose promissory note was not paid in full upon their payment default, where the promissory note was transferred by the originating Plaintiff to a non-Plaintiff third party after origination. To the extent Plaintiffs claim such notes were allegedly assigned back to a Plaintiff prior to their filing of the Complaint, Plaintiffs have failed to state a cause of action because Plaintiffs have failed to allege any transfer or reassignment in their Complaint. Upon information and belief, Plaintiff(s) no longer own the promissory notes they originate shortly after origination, with a majority of such promissory notes being subsequently transferred through and in connection with securitization facilities and/or secured financing credit facilities.

Doc. 41 at 27-28.  Plaintiffs argue that this affirmative defense should be stricken because "it is insufficiently pled, duplicative, and prejudicial to Wyndham."  Doc. 42 at 11.  Defendants' response primarily asserts that standing can be raised as an affirmative defense (Doc. 44 at 7-8),

13

but Defendants fail to address Plaintiffs' challenges—namely, the sufficiency of the allegations and the contention that the affirmative defense is duplicative.

Plaintiffs argue that Defendants have not sufficiently pleaded standing as an affirmative defense. *See* Doc. 42 at 11. Plaintiffs contend that the allegations "center[] around . . . whether Wyndham is the real party in interest as to the promissory notes, not whether Wyndham has traditional standing under Article III." *Id.* (citing *Sas v. Serden Techs., Inc.*, 2013 WL 12086638, at *2-3 (S.D. Fla. Dec. 3, 2013) (distinguishing Article III standing from the real party in interest rule)). Defendants respond by referencing another case involving Wyndham where "this Court denied a motion to strike a standing defense because [the defense] put the Plaintiffs on notice that the Defendant would challenge Plaintiffs' standing to bring an action on behalf of their subsidiaries[.]" Doc. 44 at 8 (referencing Doc. 157 at 7, *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates*, No. 6:18-cv-2171-GAP-DCI (M.D. Fla. Dec. 11, 2019). The undersigned agrees with Plaintiffs that Defendants have not pleaded an Article III standing defense.[1]

This conclusion is bolstered by Defendants' response, where they re-state that the purpose of the defense is to challenge whether Plaintiffs are the real party in interest. *See* Doc. 44 at 8 ("if Plaintiffs did not own the debts or interests at the relevant times, they may not have standing to claim injury from Defendants' interactions with those timeshare owners"). As a general matter, "[s]tanding concerns the constitutional limitations on a federal court's jurisdiction, whereas the real party in interest rule, as defined by Fed. R. Civ. P. 17(a), addresses the prudential limitations on the exercise of this jurisdiction." *Sas v. Serden Techs., Inc.*, No. 12-CV-61296, 2013 WL

---

[1] To the extent Defendants believe they have a basis to challenge Plaintiffs' standing, they should do so by separate motion in accordance with Rule 12(h)(3). *See Daniel v. Fed. Ins. Co.*, No. 6:21-CV-1632-WWB-EJK, 2022 WL 19336299, at *2 (M.D. Fla. Jan. 13, 2022) (striking affirmative defense challenging the court's subject matter jurisdiction and ordering defendants to file a motion to dismiss).

12086638, at *2 (S.D. Fla. Dec. 3, 2013).  The distinction between standing and the real party in interest rule is also central to the Court's order that Defendants reference in support of their argument.  The defendant in that case properly pleaded a standing defense, and the Court reasoned that it would not strike the defense because the parties disputed whether the harm was "concrete and particularized"—one of the elements of standing.  Doc. 157 at 7, Case No. 6:18-cv-2171 (noting that defendant disputed whether "both Plaintiffs and their wholly-owned subsidiaries 'suffered concrete and particularized injury by breaches of the timeshare contracts'"); *see also Sas*, 2013 WL 12086638, at *2 ("[a] plaintiff has Article III standing to assert a claim if: (1) it can show it has suffered an injury in fact that (a) is concrete and particularized . . ."). Here, Defendants have not alleged a standing defense but have made allegations that Plaintiffs are not the real parties in interest.

Plaintiffs further argue that the Eleventh Affirmative Defense is duplicative of the Sixth Affirmative Defense—which challenges whether Plaintiffs are the real party in interest.  Doc. 42 at 12.  Defendants respond that the Eleventh Affirmative Defense is "broader in scope" than the Sixth Affirmative Defense because it "addresses the standing problem 'with respect to any timeshare owner that financed their purchase and whose promissory note was transferred by [Plaintiffs] to a non-Plaintiff after origination.'"  Doc. 44 at 7.  But the undersigned finds the Sixth Affirmative Defense equally broad, pertaining to "most or all of the timeshare contracts underlying [Plaintiffs'] claims."  Doc. 41 at 23.  Further, Defendants' response reinforces Plaintiffs' argument by bringing up the real party in interest issue with respect to the Eleventh Affirmative Defense. Doc. 44 at 6-7 ("Plaintiffs were not the real parties in interest or have no injury from those owners' defaults").  At bottom, the undersigned cannot identify a meaningful distinction between the Sixth and Eleventh Affirmative Defenses.

Plaintiffs also note that Defendants have embedded another "defense" in the Eleventh Affirmative Defense: failure to state a claim. Doc. 42 at 12 ("Moreover, in addition to lodging repetitive real party in interest arguments, the Eleventh Affirmative Defense claims that 'Plaintiffs have failed to state a cause of action . . .'"). Plaintiffs ask the Court to strike the Eleventh Affirmative Defense because "claims of failure to state a cause of action are not affirmative defenses[.]" *Id.* at 12. Defendants do not address this argument. *See generally*, Doc. 44. Regardless, "[w]hen two separate defenses are pled under a single affirmative defense heading, the proper course of action for the court is to strike the defendant's affirmative defense without prejudice, giving leave for the defendant to amend." *Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1193 (S.D. Fla. 2019).

In sum, the Eleventh Affirmative Defense fails because it is insufficiently pleaded, appears duplicative of the Sixth Affirmative Defense, and mingles multiple affirmative defenses under one heading. Accordingly, the undersigned recommends that the Court strike the Eleventh Affirmative Defense.

2.    **Twelfth Affirmative Defense**

Defendants' Twelfth Affirmative Defense—Setoff—is legally inapplicable to the claims raised in the Complaint. Defendants allege the following:

> TWELFTH AFFIRMATIVE DEFENSE: Setoff – All Counts
>
> Defendants assert that they are entitled to a setoff for (i) the value of the timeshare interest and/or other interests claimed as received (or for which Plaintiffs have the right to claim or receive) by Plaintiffs upon their cancellation of a defaulted owner's timeshare interest, (ii) the additional incremental value realized upon any subsequent resale of the cancelled timeshare interest, and (iii) with respect to a defaulting timeshare owner that owned a separate third-party timeshare that Plaintiffs agreed to pay off in connection with the owner's timeshare purchase, but Plaintiffs either never satisfied or upon the owner's default on Plaintiffs' timeshare, the amount that

16

> Plaintiffs wrongfully discontinue paying on behalf of the defaulted owner

Doc. 41 at 28.  Plaintiffs argue that the defense "is entirely based on purported value Wyndham may recover from third parties, i.e., timeshare owners . . . This, as a matter of law, is not setoff." Doc. 42 at 14.  In response, Defendants reiterate their defense and assert—again without citing any legal authority—that any monetary relief awarded to Plaintiffs "should be reduced by the amount of value Plaintiffs have already recovered."  Doc. 44 at 9.  The undersigned agrees with Plaintiffs.

Defendants fail to contend with the heart of Plaintiffs' argument: that reducing a damages award by any amounts recovered from third parties is not setoff.  The Eleventh Circuit has defined setoff as "a counter demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action."  *In re Smith*, 737 F.2d 1549, 1552 n.8 (11th Cir. 1984); *see also Baklid-Kunz v. Halifax Hosp. Med. Ctr*., No. 6:09-CV-1002-ORL-31, 2014 WL 2968251 (M.D. Fla. July 1, 2014) (explaining that "a true setoff arises from a transaction that is extrinsic to the plaintiff's cause of action, and is intended to avoid the situation where A is ordered to pay B even though B owes money to A").  Defendants have not articulated any basis under which a setoff could apply here.  Because there is no apparent set of facts under which a setoff would be available, the Twelfth Affirmative Defense is properly stricken as legally insufficient.

3.      **Fifteenth Affirmative Defense**

Defendants' Fifteenth Affirmative Defenses addresses the scope of equitable remedies. Defendant alleges:

> FIFTEENTH AFFIRMATIVE DEFENSE: Overbroad Injunctive
> Relief – All Counts
>
> Defendants assert that Plaintiffs' prayer for injunctive relief is overbroad in that it seeks the complete cessation of all Defendants' business activities, rather than merely enjoining the Defendants

> from engaging in the specific conduct or advertising, if any, that the trier of fact may determine is wrongful or actionable under any of Plaintiffs' claims.

Doc. 41 at 29. Plaintiffs argue that the Court can strike the Fifteenth Affirmative Defense as "patently frivolous" because Defendants have apparently misread the Prayer for Relief. Doc. 42 at 15 ("[Plaintiffs seek] the kind of injunctive relief that [Defendants] state would be appropriate—enjoining Linx's conduct that is found to be wrongful or actionable"). In response, Defendants contend that they raised the defense "to contest any overly expansive injunction (for example, an order enjoining Defendants from doing any business whatsoever, as opposed to enjoining specific allegedly deceptive statements." Doc. 44 at 11. The undersigned agrees that Defendants appear to have raised an affirmative defense inapplicable to the allegations in the Complaint.

In the Complaint, Plaintiffs seek the following injunctive relief:

> Entry of permanent injunctive relief against Defendants, as well as their agents, representatives, employees, and affiliates, prohibiting Defendants from publishing or contributing to any false and misleading statements in advertising; engaging in any deceptive and/or unfair conduct; and engaging in any other improper acts described herein

Doc. 1 at 30. A review of the plain language indicates that the injunctive relief sought *is* limited to enjoining actions the Court "may determine is wrongful or actionable under any of Plaintiffs' claims." Doc. 41 at 29. Further, "[a]n affirmative defense must be based on more than mere speculation." *Demeritt v. Wal-Mart Stores E., LP*, 2021 WL 3082685, at *5 (M.D. Fla. June 4, 2021). Defendants' assertion that they raised the defense to "contest any overly expansive injunction (for example, an order enjoining Defendants from doing any business whatsoever, as opposed to enjoining specific allegedly deceptive statements)" suggests that their defense is not based on the allegations in the Complaint. Rather, the defense is based on Defendants' speculation over what relief the Court may grant in future. As such, the undersigned is not inclined to treat

18

the Fifteenth Affirmative Defense as a specific denial because it is not a negative averment of Plaintiffs' allegations. *See Muschong v. Millennium Physician Group, LLC,* No. 2:13-CV-705-FTM-38CM, 2014 WL 3341142 at *2 (M.D. Fla. July 8, 2014) ("When a party incorrectly labels a negative averment as an affirmative defense . . . the proper remedy is . . . to treat it as a specific denial").

Accordingly, the undersigned recommends the Court strike the Fifteenth Affirmative Defense because it does not apply to the allegations made in the Complaint. *See Rioux v. Carnival Corp.*, No. 23-CV-22348, 2023 WL 8111846, at *4 (S.D. Fla. Nov. 22, 2023) (striking an affirmative defense because it "does not apply to the allegations in the Amended Complaint").

### IV.     CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** the Motion to Strike (Doc. 42) such that the Court:

1.     **STRIKE** the Eleventh, Twelfth, and Fifteenth Affirmative Defenses;

2.     Treat as Denials the First, Tenth, Fourteenth, Seventeenth, Twenty-Second, Twenty-Third, Twenty-Fourth, and Twenty-Sixth Affirmative Defenses; and

3.     Allow the Second, Twentieth, and Twenty-Fifth Affirmative Defenses to stand, subject to a renewed motion, if appropriate, at a later stage of the litigation.

### NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-

to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

   **RECOMMENDED** in Orlando, Florida on February 6, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

20